Affirming.
Appellant, Neville Warford, jointly indicted with Edgar Lee, Bryan Glass and Esby Warren for the murder of Ed Morrow, was tried separately, found guilty of manslaughter and adjudged to serve a term of two years in the state penitentiary. He prosecutes this appeal from that judgment.
It is urged for him that he was entitled to a directed acquittal at the close of the testimony, and that the verdict is not sustained by sufficient evidence. *Page 676 
Those grounds for reversing the judgment are ably and vigorously urged. It is argued that the Commonwealth does not contend, and that there is no evidence in the record tending to establish, that appellant inflicted the fatal wound upon Ed Morrow, and with great vigor insisted that no testimony may be found in the record tending to establish that appellant aided or abetted whoever did kill him. Therefore, a consideration of the facts is necessary.
It appears that the four defendants, appellant, Warford, and Lee, Glass and Warren, had been together the greater part of the day on Sunday, June 15th, 1924. According to their own admissions they had drunk a considerable quantity of whiskey but claimed not to be drunk. At approximately eight o'clock, p. m., in a Ford coupe, they drove to the roadway leading from Wapping street in Frankfort, Kentucky, to the wharf on Kentucky river, and Lee, Glass, and appellant there left the car and went to the wharf intending to make the trip on the excursion steamer due to leave on the wharf at eight o'clock. Warren did not accompany them, but drove off with the Ford coupe intending to spend the evening in another line of pleasure. Another party composed of Ed Morrow, Nick Thomas and William Cuffe went to the wharf that evening to make the trip on the excursion steamer. Before either party could board the boat it departed. A number of persons other than those named seem also to have been left when the boat departed. Of the participants in the tragedy which soon followed, Morrow and Thomas and Cuffe seem to have proceeded up the road leading from the wharf to Wapping street slightly ahead of Lee and Glass and appellant Warford. It does not appear that there had ever been any previous trouble or difficulty between any of the persons concerned in the tragedy which followed. In fact, the most of them were strangers to each other. Thomas and Cuffe, who were with Morrow, were residents of the city of Louisville and knew none of the other parties except Morrow. Just as Morrow, who seems to have been slightly in the lead, reached Wapping street, Warren, driving the car in which appellant and his codefendants had gone to the wharf, by chance happened to pass that way again and turning out of St. Clair into Wapping street passed very close to Morrow, Thomas and Cuffe. As he did so, according to the testimony of the latter two, Morrow called to him "Look out, fellow, don't run over us." They testified *Page 677 
that Warren immediately stopped and as they were proceeding across Wapping street left the car, intercepted them and assaulted Morrow. Whereupon, appellant Warford and his codefendants, Lee and Glass, ran to his assistance and took part in the assault upon Morrow, following which they interfered in behalf of Morrow. The four defendants testified that Warren stopped his automobile not because of what was said when he passed near Morrow, but that just as they reached the top of the river bank they saw Warren passing in the car, Lee whistled to him, attracted his attention, and that he stopped to take them into the car again. They testified that when he stopped some one of the three members of the other party ran to the car, pulled Warren from it, struck him on the head and rendered him unconscious, and as they came up Morrow, Thomas and Cuffe turned on them and they entered the fight solely to defend themselves from that attack. The automobile appears to have stopped somewhere near the center of Wapping street. The evidence establishes beyond question that the first fighting was done near and about the automobile. In the course of the fight the tools, including the pump and the jack, were taken from the automobile and were used as weapons by some of those fighting on the side of appellant. The scene of the fighting then shifted to the sidewalk on the north side of Wapping street, and it was there that Morrow was killed, his assailant stabbing him with a knife which penetrated the heart. He fell under one of the windows of the building then being used by the Ragged Robin tea room. The fighting did not cease when Morrow was killed. The scene of the fighting shifted to the street near the car again and across the street to the roadway leading to the wharf, and when finally stopped by the appearance of the policemen Lee and Warren and appellant Warford had William Cuffe down, one of them dragging him in the direction of the river by his hair, the other two kicking him and some of them calling out, "Throw him into the river."
Appellant testifying for himself stated that after the boat left them and they returned to the top of the river bank at Wapping street, Warren passed by in the Ford coupe, and Edgar Lee whistled to him, and that Lee and Glass started across the street to the car and he followed them. They went to the right of the coupe and he to the left, and when he got within about five feet of the car he saw someone hit Warren and saw him fall. He *Page 678 
then ran around the coupe to help Warren who had been knocked down, and someone hit him in the eye. According to his testimony, after that he took no further part in the fight and at no time said or did anything to aid or assist or encourage Lee or Glass or Warren or anyone else in the fighting they did, or in the stabbing or killing of Ed Morrow. He did nothing save attempt to assist Warren to his feet after someone had knocked him down, and then it was he received the blow in the eye which put him out of the fight entirely. Unfortunately for him the other testimony found in the record herein does not sustain appellant. Nick Thomas and William Cuffe, who did not know the parties and consequently could not testify who they were, both testified that immediately after the man who was driving the Ford coupe, shown by all the other testimony to be Esby Warren, stopped it he assaulted Morrow as he crossed the street. Three other persons ran up and took part with Warren in the fight against Morrow. Cuffe's testimony on the subject was:
 "Q. What occurred then? A. The fellow pulled up about fifteen or twenty feet and stopped. He then got out and came towards Morrow and swung at Morrow. They started fighting and three fellows come up and jumped on Morrow. Thomas went in to help Morrow, and some fellow swung at him and I went to help Thomas and some fellow swung at me and hit me across the nose and back of the head."
Billy Bell, a native of Franklin county, and who seems to have known all the participants in the affray, and who also had been left by the boat that night and returned to the street at the top of the river bank shortly afterwards, and who saw the fight immediately after it started, was asked: "Who was fighting," and answered: "Bryan Glass and this here Warford boy was on Nick Thomas." Further he said: "Bryan Glass and this boy (appellant) were on Nick Thomas; I run in between them and the next time I saw Bryan Glass he was hitting 'Steno' over the head with a pump." 'Steno' appears to be a nickname for William Cuffe. That witness appears to have left before the fight was over and saw no more of it, and the fighting that he saw took place near the car and about the middle of the street. Leslie Costigan, who was at the wharf when the boat left and who returned immediately to Wapping street, and who saw *Page 679 
Warren pass in the Ford coupe and saw it stop, testified thus as to what occurred:
 "Q. Then what occurred? A. When I got up there, Warren and Thomas was fighting. Q. Was Warren the fellow driving the car? A. Yes, sir. Q. Did you see him driving it? A. Yes, sir. Q. Who was fighting? A. He and Thomas. Q. Did you see Morrow then? A. No, sir. Q. He had disappeared at that time? A. Yes, sir. Q. Go ahead and tell what occurred then? A. Lee, Warford and Glass come up in a few minutes and they made a break at Thomas and he shoved Warren backwards towards the car. All three of them made the break and they backed him on the sidewalk next to the Ragged Robin and then they went to the back of the coupe and got a jack and pump and threw the jack at Thomas, one of them did, I believe, and I didn't see Thomas any more. Q. Now, did you see Cuffe at that time, shortly after that, about that time? A. Well, I think he and Glass were fighting behind the car. Q. What was he doing to Glass or Glass doing to him? A. Fighting one another. Q. Did you see Glass hit him with a pump? A. No. Q. Go ahead. A. They were fighting there, and in a few minutes Lee and Warford come to his assistance and they were all three on Cuffe. Q. By that time, what was his condition? Was he on the ground, I mean? A. Yes, he was on the ground. Q. Tell what occurred? A. Lee had him in the top of the head; the others were all around him fighting him. Q. Did you hear any remarks made? A. I heard a remark coming from the three men there, saying, 'Let's throw him into the river.' "
Miss Martine Monarch, who at the time was having dinner at the Ragged Robin tea room and who was sitting at a table just inside of one of the windows facing Wapping street, attracted by the loud talking and swearing from the street, as to appellant Neville Warford, testified as follows:
 "Q. What did you see when you looked out? A. I saw a boy that I later learned was Neville Warford. Q. You saw his face, did you? A. Yes, I saw his face. Q. Do you now recognize the person who was there that night? A. Yes, sir. Q. Who *Page 680 
was it? A. Neville Warford. Q. What was he saying, Miss Monarch? A. Well, I don't remember exactly. Q. What I mean, was he using oaths? A. Yes, he was swearing and talking a lot of ugly talk, I don't remember just what it was. Q. Were there other people out on the sidewalk other than he? A. There were other people, yes. Q. Did you afterwards see the boy on the sidewalk that was stabbed? A. I saw him lying on the sidewalk. Q. Before you saw him lying on the sidewalk, could you see him? A. No. Q. Could you tell whether Warford was talking to some one on the sidewalk? A. He was talking to some one just at my back. Q. Tell in your own words what occurred from there on when you saw Warford there cursing? A. I tried not to look. I turned around and tried to pay no attention to what was going on outside. I heard some one say, 'Kill him with the knife, with a knife,' or 'the knife,' or something of the sort. When they said that, I remarked, 'They have a knife,' and I was scared and wanted to leave. Dan said, 'Oh, go on and eat and don't pay any attention to it.' Next time I looked out, I would look out and then back. I saw the boy on the sidewalk, lengthwise on the sidewalk. He raised almost to a sitting position and put his feet down but didn't fall. Q. Did you hear any noise from the boy? A. Only heard him breathing. Q. What kind of breathing did he make? A. Gurgling, deep, hard breathing."
John Rogers, a witness for the Commonwealth, who from St. Clair street first saw that there was a fight in progress, went closer and recognized deceased, Morrow, and Lee, one of appellant's codefendants, facing each other on the sidewalk by the side of the Ragged Robin tea room, and their attitude toward and words for each other caused Rogers to go into the Ragged Robin and call the police. When he returned he found Morrow in a dying condition lying on the sidewalk near where he had last seen him, and the scene of the fighting had shifted across the street and upon investigation he found that Lee and Glass and appellant, Warford, had William Cuffe down. He described him as "the bloodiest man I ever saw." He went between them and Cuffe and someone of the three said of him, "Kill that big s__ of a b____ too." He then said to them, "You have killed one man *Page 681 
across the street and you are not going to kill this one." He assisted Cuffe to his feet, and about that time a policeman arrived and put appellant and his codefendants under arrest.
It thus appears from the testimony introduced for the Commonwealth that appellant, Warford, entered the fight at its beginning, took part in the fighting first done in the street near the Ford coupe, was seen and recognized by Miss Monarch to be on the sidewalk within three or four feet of where Morrow was stabbed and died, and while there was heard by her to curse and swear. After Morrow was given his fatal wound and fell on the sidewalk appellant, Warford, and his codefendant, Lee, were identified by Leslie Costigan as they returned to the center of the street where Cuffe and Glass were engaged in fighting, and both of them immediately went to the aid of Glass and the three of them knocked Cuffe down, dragged him by his hair across the street and into the road leading to the river, striking him and kicking him and threatening to kill him and throw him into the river. They were prevented from doing so by the interference of John Rogers. There is a clearcut issue of fact as to whether Morrow and his friends or Warford and his friends first started the fight, but the evidence as a whole, and we think the portions of it quoted above, establish beyond question that the fighting done by Warren and Lee and Glass, and appellant, Warford, was done in concert, and that that done by Morrow and his friends, Thomas and Cuffe, likewise was done in concert. Lee and Glass and appellant, Warford, unquestionably entered this fight in aid of their codefendant, Esby Warren, and all of the fighting done by each of them thereafter appears to have been done in furtherance of their common design to aid and assist each other. There was testimony that appellant, Warford, entered the fight at its inception, fought over all the ground covered by it from the center of the street to the sidewalk on the north side, was identified as being in the immediate presence of Morrow cursing and swearing when he was fatally wounded. After Morrow was finished he and Lee returned to the center of the street and took up the fight, still in progress there, and continued to fight until interference by disinterested citizens and the police put an end to it. In this state of case the court is unable to conclude that the record furnishes no evidence that appellant, *Page 682 
Warford, aided or abetted whoever killed Ed Morrow in so doing.
A bloody knife was found in the street near where Morrow died. It was introduced in evidence by the Commonwealth. It was shown that though stabbed to the heart Morrow did not bleed externally. It was shown that Nick Thomas, one of those engaged in the fight on the side of deceased Morrow, had a wound on his right hand from which he bled profusely. The theory is advanced for appellant that those facts furnish evidence conclusive that Morrow was killed not by any of the defendants but by his friend Thomas. Although a great many persons appear to have been near the scene of this tragedy no one, so far as the record discloses, appears to have seen the fatal blow struck which inflicted the knife wound upon Ed Morrow from which he died, or to be able to testify positively as to who inflicted it, except one witness, Dalton by name. He appears to be now confined in the penitentiary serving a term for grand larceny. He testified that Thomas stabbed Morrow. However, his explanation of how he, a resident of Louisville, while on his way from Lexington to Louisville, by mere chance happened to be present and to see this affray, coupled with the fact that his version of it is in direct conflict with the testimony of John Rogers and Miss Monarch as to the location of the participants in the tragedy, and the fact of his conviction of a felony account for the small part his testimony played. The bloody knife, the fact that deceased did not bleed externally, and Thomas' bloody hand were among the great number of facts and circumstances submitted to the jury for its consideration and do not possess and can not be held to have the conclusive effect insisted by counsel for appellant. Certainly the testimony of John Rogers as to the attitude and threats of Lee toward Morrow when he left them to call the police and as to finding Morrow down mortally wounded where he had left him upon his return in less than two minutes, together with that of Leslie Rogers, who saw Morrow after he had fallen and saw Lee run from the place where he fell, is sufficient to take to the jury the Commonwealth's theory that Lee killed Morrow. The knife found was not necessarily the one that killed Morrow.
After a most careful consideration of the entire record, this court is unable to sustain either position *Page 683 
taken by appellant, that he was entitled to a directed verdict or that the verdict is flagrantly against the evidence.
Appellant insists that the trial court erred in refusing evidence offered for him that the witnesses, Nick Thomas and William Cuffe, had been tried and convicted in the police court of Louisville of the offense of being drunk and disorderly. Appellant is in error as to this. Section 597 of our Code of Practice expressly provides that a witness may not be impeached by evidence of a particular wrongful act except that it may be shown that he has been convicted of a felony.
Appellant's objections to the instructions given were founded upon his contention that there was not sufficient evidence to take the case to the jury. The instructions offered, which appellant insists should have been given, were but repetitions of legal principles applicable to the facts of this case fully covered by the instructions given, and failure upon the part of the trial court to give them was not error.
This court's careful consideration of the entire record herein fails to disclose that upon his trial in the court below any errors to the prejudice of appellant's substantial rights were committed. He appears to be not yet 21 years of age. Doubtless that fact accounts for the leniency of the jury in fixing his punishment when it reached the conclusion that he and his friends were responsible for the death of Ed Morrow. His plight is indeed a sad one. However, the court has had but few instances in which the facts leading to a homicide suggested less cause for it than the facts of this tragedy. Under the facts of this case it clearly was for the jury to fix the responsibility for the death of Ed Morrow either upon him and his friends as being the aggressors in and responsible for the affray in which he lost his life, or upon Lee and his friends, including appellant, as being the aggressors in and responsible for it. The jury has acted; the trial was free of error; the verdict can not be said to be flagrantly against the evidence, and hence the judgment must be affirmed.
Judgment affirmed.
Whole court sitting.
Judge Sampson dissenting. *Page 684